# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRENDA WERT, | No. 4:19-CV-00155 |
| Plaintiff, | (Judge Brann) |
| v. | |
| THE PENNSYLVANIA STATE UNIVERSITY, | |
| Defendant. | |

## MEMORANDUM OPINION

APRIL 30, 2021

## I. BACKGROUND

Brenda Wert filed a two-count complaint against The Pennsylvania State University ("Penn State"), alleging interference with her rights under the Family and Medical Leave Act of 1993 ("FMLA") and retaliation in violation of the same. Penn State answered the complaint and discovery has concluded. Wert filed a motion for summary judgment as to her interference claim. Penn State filed its own motion for summary judgment on both counts. Both motions are now ripe. Wert's motion for summary judgment is denied. Penn State's motion is granted in part and denied in part.

## II. DISCUSSION

### A. Standard of Review

I begin my analysis with the standard of review which undergirds summary judgment. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[1] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[3] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[4] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[5]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of

---

[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[2] Fed. R. Civ. P. 56(a).
[3] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).
[4] *Clark*, 9 F.3d at 326.
[5] *Id*.

proof that would apply at the trial on the merits."[6] Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[7] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[8] "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[9] The evidentiary record at trial, by rule, will typically never surpass what was compiled during discovery.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[10] "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may,

---

[6] *Liberty Lobby, Inc.*, 477 U.S. at 252.
[7] *Id*.
[8] *Id*.
[9] *Id. (quoting Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).
[10] *Celotex*, 477 U.S. at 323 (internal quotations omitted).

and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[11]

When the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[12] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) citing particular parts of materials in the record that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[13]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[14] Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact

---

[11] *Id.*
[12] *Liberty Lobby*, 477 U.S. at 250.
[13] Fed. R. Civ. P. 56(c)(1).
[14] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).

undisputed for purposes of the motion."[15]  On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[16]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[17]  "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[18]  "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[19]

### B.    Undisputed Facts

With that standard outlining the Court's framework for review, I now turn to the undisputed facts.

Brenda Wert began working for Penn State in 1999.[20]  Eventually, in 2016, she applied for a position as a financial assistant in the Department of Plant Science in Penn State's College of Agricultural Sciences.  Wert accepted that position and began her new job in June 2016.[21]  In her new position, she reported to Lori Stasko, the Administrative Support Coordinator.[22]

---

[15]  Fed. R. Civ. P. 56(e)(2).
[16]  Fed. R. Civ. P. 56(c)(3).
[17]  *Liberty Lobby*, 477 U.S. at 249.
[18]  *Id*.
[19]  *Id*. at 249–50 (internal citations omitted).
[20]  Doc. 27 ¶ 1; Doc. 34 ¶ 1.
[21]  Doc. 27 ¶ 3-4; Doc. 34 3-4.
[22]  Doc. 27 ¶ 5; Doc. 34 ¶ 5.

While employed in her previous position at Penn State, Wert was approved for intermittent FMLA leave of one day per week for migraines. This allotted leave stayed effective when she began her new position. In September 2016, Stasko held a staff meeting to discuss attendance policies and later sent a summary email.[23] The meeting and email explained office policies for calling out of work.[24] Wert attended the meeting and received the follow-up email, as well as another email about new Fair Labor Standards Act rules.[25]

The next month, Stasko met with Wert to discuss Wert's failure to meet acceptable standards of performance.[26] This meeting focused on Wert's non-FMLA-related absenteeism and failure to adhere to Penn State's attendance policies.[27] Penn State issued a written reprimand to Wert following that meeting.[28]

Several months into Wert's new position, a Human Resources Assistant from Penn State informed her that she had been designating more than the allotted one day per week for FMLA leave. Wert was told that she would need to submit documentation from her physician if she wanted to continue to have the additional time off designated as FMLA time.[29] Wert submitted a certification from her physician which conveyed that Wert would require intermittent leave of up to four

---

[23] Doc. 27 ¶ 42; Doc. 34 ¶ 42.
[24] Doc. 27 ¶ 43; Doc. 34 ¶ 43.
[25] Doc. 27 ¶ 44, 45; Doc. 34 ¶ 44, 45.
[26] Doc. 27 ¶ 48; Doc. 34 ¶ 48.
[27] Doc. 27 ¶ 48; Doc. 34 ¶ 48.
[28] Doc. 27 ¶ 48; Doc. 34 ¶ 48.
[29] Doc. 27 ¶ 11; Doc. 34 ¶ 11.

days per week.[30] Seemingly in response to this increased allotment of FMLA leave, the HR Assistant required Wert to submit documentation from her physician monthly to maintain her FMLA leave.[31]

This monthly routine continued until December 2016, when Penn State informed Wert that it would seek a second opinion on the validity of her FMLA status.[32] This second opinion examination took place in January 2017.[33] The doctor who examined Wert concluded that he could "find no clinical justification for [Wert's] need for any intermittent FMLA leave as described."[34] Penn State then denied Wert's FMLA request as a result of the second opinion examination.[35] The HR Assistant told Wert that any absences up until January 26, 2017 would be considered FMLA-approved, but beyond that point, Wert would not be entitled to FMLA leave for her migraines.[36]

In April 2017, Stasko and another Penn State employee discussed terminating Wert with the Head of the Department of Plant Science because Wert's attendance issues continued.[37] The Dean and the Office of Human Resources

---

[30] Doc. 27 ¶ 13; Doc. 34 ¶ 13.
[31] Doc. 27 ¶ 5; Doc. 22 ¶ 6-9. The parties dispute whether these monthly submissions constituted "new certifications" or "recertifications," a question discussed below.
[32] Doc. 27 ¶ 24; Doc. 34 ¶ 24.
[33] Doc. 27 ¶ 26; Doc. 34 ¶ 26.
[34] Doc. 27 ¶ 30; Doc. 34 ¶ 30.
[35] Doc. 27 ¶ 31; Doc. 34 ¶ 31.
[36] Doc. 27 ¶ 33; Doc. 34 ¶ 33.
[37] Doc. 27 ¶ 50-52. Wert's response to each of these three paragraphs is as follows: "Denied. However, the information contained in this paragraph is neither relevant nor material. By way of further response, see [Doc. 22] ¶¶ 19, 30-33." She makes similar assertions in response to several other facts introduced by Penn State. A party treats evidence as irrelevant at her own

approved Wert's termination.[38] A few weeks later, on May 17, Stasko and two other Penn State employees planned to meet with Wert to tell her she had been fired.[39] Wert incidentally called out of work for all of May 17-19, so they were unable to meet with Wert until May 22. Stasko met with Wert that day and provided Penn State's rationale for terminating her.[40] Wert was placed on administrative leave on May 22 and her termination was effective July 3, 2017.[41]

### C. Analysis

#### 1. The Competing Motions for Summary Judgment on Count 1

Neither party has demonstrated an entitlement to summary judgment on Wert's FMLA interference claim. To establish this claim, a plaintiff must show that: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention

---

peril, and this cursory claim by Wert is plainly insufficient to properly deny the evidence produced by Penn State. Nothing in the four paragraphs Wert cites responds to Penn State's statement of facts. The Middle District of Pennsylvania's Local Rules are clear that statements of material facts in opposition to a motion for summary judgment must "include references to the parts of the record that support the statements" and that all "material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." M.D. Pa. L.R. 56.1. Wert's failure to controvert Penn State's evidence on these points – or even meaningfully respond to them – leads the Court to deem these statements admitted.

[38] Doc. 27 ¶ 52.
[39] Doc. 27 ¶ 53.
[40] Doc. 27 ¶ 54-56; Doc. 34 ¶ 54-56.
[41] Doc. 27 ¶ 56; Doc. 34 ¶ 56.

to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA."[42]

There remain disputed facts on more than one of these elements. Wert has not necessarily shown that she was entitled to FMLA leave after January 2017. Putting aside whether Penn State had a right to seek a second opinion on Wert's FMLA status, it seems possible that Wert would not have been entitled to FMLA leave after January 2017. The doctor's certification she received in October 2016 suggests that she would need a reduced work schedule through about January 2017.[43] Wert provides little commentary in briefing or evidence for whether she would have received FMLA certification for any period after that. Wert has also not established that she gave proper notice to Penn State of her intention to take FMLA leave after January 2017. As a result, she has also not established that she was entitled to any benefits which she was denied.

At the same time, there are questions that also preclude Penn State's motion for summary judgment. The main issue there is whether Penn State could seek out a second opinion on Wert's November 2016 certification. This depends on whether the repeated requests for certification are properly considered new certifications or recertifications. Penn State contends that the repeated certifications should be seen as new certifications, which would then allow them to

---

[42] *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017).
[43] Doc. 28 Ex. 1 (PSU000156).

obtain a second opinion after any given iteration. Wert, on the other hand, notes that the Penn State employee who communicated with her described the process as a recertification. But neither party provides any precedent supporting its position for what seems to be a legal question. Both parties simply postulate, which prevents this Court from finding that either party has established its right to summary judgment based on the arguments presented.[44] The dueling motions for summary judgment are both denied.

### 2. Penn State's Motion for Summary Judgment on Count 2

Penn State also moved for summary judgment on Count 2, the FMLA retaliation claim. An FMLA retaliation claim is analyzed under the familiar burden-shifting framework common to many employment discrimination claims.[45] To prevail on that claim, Wert first needed to show that: "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights."[46] If the plaintiff can establish a prima facie case, the employer "must articulate a legitimate, nondiscriminatory reason for the adverse employment action. The burden then shifts back to the plaintiff to prove, by a preponderance of the

---

[44] The Court imagines that the parties will likely seek a ruling on this issue if they file motions in limine. The parties should be prepared to engage with the legal question more closely at that time.
[45] *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).
[46] *Lichtenstein v. University of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012).

evidence, that the articulated reason was a mere pretext for discrimination."[47] Here, the Court assumes, without holding, that Wert can establish the first two prongs of her claim, and considers only the questions of causation and the latter two steps in the *McDonnell Douglas* framework.

Generally, a plaintiff seeking to establish causation in the FMLA retaliation context needs to produce evidence of an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or a pattern of antagonism coupled with timing to establish a causal link between the protected activity and the allegedly retaliatory action.[48] Wert largely focuses on the first avenue option to survive Penn State's motion for summary judgment, but I consider whether either is established.

Wert cannot establish an unusually suggestive temporal proximity between her May 18, 2017 request for a day off and her May 22 termination. Now, of course, those two dates are obviously very close together. But the sequence of events is important. The uncontroverted evidence establishes that Penn State made its decision to fire Wert on May 17, the day before Wert asked for a day off. Despite Wert's unsupported allegation that this fact is "neither relevant nor

---

[47] *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 152 (3d Cir. 2017) (quoting *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014)).
[48] *Budhun v. Reading Hosp. and Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014).

- 11 -

material," it is obvious to the Court that this fact is essentially dispositive on the question of temporal proximity.[49]

Penn State's decision to fire Wert could not have been *caused* by her May 18 request if Penn State made its decision *before* that request. An opposite conclusion would not follow logically. That, after making its decision, Wert asked for time off, did not require Penn State to delay firing Wert. "[E]mployers need not suspend plans to discipline an employee upon discovering that said employee engaged in protected activity on matters unrelated to the contemplated action."[50] Wert does not provide any evidence to contradict Penn State's showing that it had decided to fire Wert before May 18, 2017. Thus, Wert cannot rely on the temporal proximity between these two events to defeat summary judgment.

Because the May 2017 request for time off is not indicative of causation, the Court looks at the previous time when Wert arguably took what might have been considered FMLA leave, March 3, 2017.[51] The Third Circuit has noted that "the mere fact that adverse employment action occurs after [protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal

---

[49] Doc. 34 ¶ 53. As discussed above, Wert's bald denial of this fact, with no citation to the record that controverts Penn State's showing, cannot create a genuine dispute of material fact.
[50] *Lichtenstein v. University of Pittsburgh Med. Ctr.*, 691 F.3d 294, 309 (3d Cir. 2012).
[51] Penn State argues that the appropriate date to evaluate the temporal proximity from from would be the end of January 2017, when Wert's note from her doctor suggests FMLA leave would be necessary until. The Court uses the March 2017 date to view the facts in the light most favorable to Wert. Whichever day is used, however, the result is the same. Using the January 2017 metric, of course, makes Penn State's argument for summary judgment even stronger, as it increases the time between any possibly protected activity and Wert's termination.

link between the two events."[52] The two-and-one-half month gap between Wert's March 3 request and her being terminated on May 22 is too long to be unduly suggestive on its own.[53]

Next, I consider whether the second possible method of establishing causation has been met. Again, a plaintiff can alternatively show causation by producing evidence that her claims "as a whole raise an inference of discrimination."[54] "Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee . . ."[55] Here, the intervening period spans from March to May 2017.[56] During that time, the only other piece of evidence that could support a finding of causation is Lori Stasko's supposed antagonism toward Wert. Wert asserts that "[e]very time [she] used her intermittent FMLA leave for a migraine, when she returned, her supervisor, Lori

---

[52] *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).
[53] *See, e.g.*, *Mammen v. Thomas Jefferson Univ.*, 462 F. Supp. 3d 518 (E.D. Pa. 2020) (six weeks not unduly suggestive); *see also Robinson v. First State Cmty. Action Agency*, 920 F.3d 182 (3d Cir. 2019) (two months not unduly suggestive).
[54] *Woodard v. Scranton Quincy Hosp. Co., LLC*, 2019 WL 6018902 at *5 (M.D. Pa. Nov. 16, 2018).
[55] *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007).
[56] While Wert asks this Court to consider events that took place after she was fired as evidence of causation, she has provided no real evidence that the post-firing grievance process was "rigged" or a "sham," nor any precedent finding that a similar grievance process was problematic. The evidence she presents in support of her allegations amounts to little more than dissatisfaction with the result of the appeal.

Stasko, would not talk to Wert for two weeks."[57] The Court notes that Wert technically did not take FMLA leave in March 2017, so it is unclear whether Stasko ignored Wert upon her return, based on Wert's own statement of facts. In any event, the Court proceeds to the next step in the analysis.

Penn State readily meets its burden of articulating a legitimate, nondiscriminatory rationale for firing Wert.[58] Almost a year before firing her, Penn State had advised Wert that she was failing to meet acceptable standards of performance. Wert does not contest any of those failures on her part, nor does she dispute that those failures would constitute a legitimate reason for termination. Even if the evidence adduced were strong enough to establish a prima facie case of FMLA retaliation, it would not be sufficient to make out a showing of pretext, given Penn State's documented reasons for firing Wert.

The third phase in the *McDonnell Douglas* framework requires a plaintiff to submit evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[59] To succeed, she "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Penn State's]

---

[57] Doc. 22 ¶ 8. This fact is disputed. Wert also cursorily points to the new certification/recertification issue as proof of retaliation, but does not explain how these events, which ended in January 2017, show that Penn State retaliated against Wert in May 2017.
[58] *See McDonnell Douglas*, 411 U.S. 802 (1973).
[59] *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 324 (3d Cir. 2014).

proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[60] Wert has failed to do so here.

While a plaintiff may use the same evidence to establish both causation and pretext, the burden on the plaintiff is effectively greater on the latter question. Wert asks this Court to find that actions Penn State took months before firing her reveal pretext, but the distance between Penn State's alleged interference with her FMLA leave "prior to February 2017"[61] is too great to overcome the clear nondiscriminatory rationale Penn State had for firing Wert. She does not provide enough evidence otherwise allow a reasonable jury to find that Penn State fired her because she took a day off in March 2017.

Wert's argument is almost entirely dependent on her suggestion that the May 18 day off caused her termination, but as discussed, this is temporally implausible based on the record before the Court. If the sequence of events had been reversed – in other words, if Penn State had decided to fire Wert *after* she took May 18 off from work – she would have a stronger argument. But the facts as established by the parties make clear that this did not happen. Without that, the rest of her points are much less convincing, and are not enough to show that Penn State's reasons for firing her were pretextual. As a result, summary judgment is appropriate on Count 2.

---

[60] *Lichtenstein*, 691 F.3d at 310 (3d Cir. 2012).
[61] Doc. 33 at 13.

## III. CONCLUSION

Both motions for summary judgment on Count 1 are denied, and Penn State's motion for summary judgment on Count 2 is granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge