## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRENDA WERT,

        Plaintiff,

    v.

THE PENNSYLVANIA STATE
UNIVERSITY,

        Defendant.

No. 4:19-CV-00155

(Chief Judge Brann)

## MEMORANDUM OPINION

### APRIL 15, 2022

## I.    BACKGROUND

In June 2016, after over a decade and a half in various other positions at Penn State University, Brenda Wert transitioned into a role as an accountant in the University's Department of Plant Science.[1] But her tenure was short-lived. By October 2016, there were rumbling of Penn State's discontent, with Wert's supervisor calling her into a meeting to warn her about her poor attendance.[2] And in May 2017, some seven months later, Penn State fired her—citing her continued excessive absenteeism, her repeated failures to properly notify her supervisor that she'd be out, her habitual unapproved adjustments to her work schedule, and her failure to submit her March timesheet on time.[3]

---

[1]    *Wert v. Pennsylvania State Univ.*, 2021 WL 1721574, at *2 (M.D. Pa. Apr. 30, 2021).

[2]    *Id.*

[3]    *Id.* at *3; *see generally* Doc. 28-1.

Wert, however, questions Penn State's rationale. She believes that her firing stemmed from her use of the Family Medical Leave Act (FMLA). When she began in the Department of Plant Science, she held a certification allowing her to take a day of FMLA leave per week for migraines.[4] But soon after, Penn State asked her for an updated certification—a request occasioned by her use of more days a week than she was allotted.[5] In renewing her certification, Wert's doctor upped her leave, finding that her migraines required that she take off up to 4 days a week.[6] Faced with this increased allotment, Penn State began requiring Wert to submit monthly updates and exercised its right under the FMLA to have a doctor of its choosing evaluate Wert—and this doctor found that her condition did not warrant FMLA leave at all.[7] Second opinion in hand, Penn State denied Wert's certification and informed her that, as of January 26, 2017 she would no longer be able to take FMLA leave for her migraines.[8]

After trying to take FMLA leave for a migraine on January 27, 2017—a request that was rejected—Wert made no further attempts, instead logging these days as ordinary sick leave.[9] And just four months later, she was let go.[10]

---

[4]   *Wert*, 2021 WL 1721574, at *3.
[5]   *Id.*
[6]   *Id.*
[7]   *Id.*
[8]   *Id.*
[9]   Doc. 52 at 18.
[10]  *Wert*, 2021 WL 1721574, at *3.

In January 2019, Wert sued Penn State, alleging two violations of the FMLA.[11] The case proceeded to summary judgment. And while I dismissed Wert's first count, which claimed that Penn State had retaliated against her for invoking her rights under the Act, I allowed her second count, alleging that Penn State had interfered with her rights under the FMLA, to proceed.[12] With trial set for May 16, 2022, I now consider Penn State's motion in limine asking that I prevent Wert from presenting evidence that goes to the heart of her case.[13] That motion is fully briefed and ripe for disposition.

## II.   LEGAL STANDARD

The purpose of motions in limine are to aid the clear presentation of evidence at trial. "Evidence should only be excluded on a motion in limine if it is clearly inadmissible on all potential grounds. The movant bears the burden of demonstrating that the evidence is inadmissible . . . ."[14]

## III.   ANALYSIS

Penn State's motion in limine makes four arguments, which can be separated into pairs. The first and second center on the requirement that Wert prove damages, essentially arguing that because I dismissed Wert's retaliation claim, her firing was therefore legitimate, nondiscriminatory, and valid, thus bringing this case to a close.

---

[11]   *See generally* Doc. 1.
[12]   *Wert*, 2021 WL 1721574, at *4–6.
[13]   *See generally* Doc. 50; Doc. 51; Doc. 53.
[14]   *Hunt v. Drake*, 2020 WL 3402343, at *1 (M.D. Pa. June 19, 2019).

The third and fourth focus on the lawfulness of the opinion that Penn State used to deny Wert's continued leave. The University argues that as result, Wert cannot prove that it interfered, that she had a serious medical condition, or that she gave notice of her intention to take FMLA leave—any one of which would upend her case.

I'll address each in turn.

### A.      The Effect of This Court's Dismissal of Wert's Retaliation Claim

Penn State's claim that my dismissal of Wert's retaliation claim prevents her from recovering post-termination losses, and in turn warrants the dismissal of the case, rests on the confluence of two areas of law. First is the law limiting employer's liability for post-termination wages after a lawful termination. It is elementary that "[a]n employee who requests FMLA leave [has] no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request."[15] And when an "employment relationship has been terminated for lawful reasons, the employer no longer has a duty to compensate the employee."[16] Indeed, any other rule "would interfere with an employer's right to hire and fire at will."[17] As a result, an employer's "[l]iability for lost wages . . . cease[s] when the employment relationship lawfully ends."[18] Second

---

[15]    *Bearley v. Friendly Ice Cream Corp.*, 322 F. Supp. 2d 563, 571 (M.D. Pa. 2004) (Caputo, J.) (quoting *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)).

[16]    *Lapham v. Vanguard Cellular Sys., Inc.,* 102 F. Supp. 2d 266, 270 (M.D. Pa. 2000) (Caldwell, J.).

[17]    *Id.* (citing *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361 (1995) and *Hite v. Biomet, Inc.*, 53 F. Supp. 2d 1013, 1026 (N.D. Ind. 1999)).

[18]    *Id.*

is the law providing that proof of economic loss is a necessary component of an FMLA claim. Even in the face of blatant violations, without this showing, an employee's claim must be dismissed.[19]

There's an intuitive appeal to Penn State's argument: if a reasonable jury could not conclude that Wert had overcome Penn State's clear nondiscriminatory rationale for firing her—to say nothing of showing a causal connection between her leave and her firing at the first stage of the *McDonnell Douglas* framework—how could they find that Penn State's interference with her FMLA rights caused her firing? But this syllogism irons over essential distinctions; under the FMLA, "retaliation is not the only impermissible reason for dismissal."[20]

29 U.S.C. § 2615 provides plaintiffs two causes of action: section 2615(a)(1), prohibits employers from interfering with employees "exercise" or "attempt[s] to exercise" their leave rights;[21] while section 2615(a)(2) prohibits employers from retaliating against an employee for invoking their right to FMLA leave.[22] But neither interference nor retaliation alone sustains a claim. Plaintiffs must also prove that the

---

[19]  *Id.* at 270 (citing Kelly N. Honohan, Note, *Remedying the Liability Limitation under the Family and Medical Leave Act*, 73 B.U. L. Rev. 1043, 1049 (1999)).

[20]  *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002).

[21]  29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.").

[22]  29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."); *see Erdman v. Nationwide Ins. Co.*, 583 F.3d 500, 509 (3d Cir. 2009) (discussing how section 2615(a) protects employees who have *invoked* their right to leave, but did not "use" FMLA leave because they were fired before it began).

violation caused a financial harm.[23] Under section 2617(1)(A)(i)(I)–(II), an employer who interferes or retaliates is liable for job-related compensation losses "by reason of the violation," or—when the violation does not result in a firing, hours reduction, or demotion—losses directly occasioned by the violation, such as the cost of procuring substitute care for a child or family member.

Still, it would be a mistake to read section 2615(a)(1) as merely allowing employees to recover the cost of substitute care when their FMLA request was wrongfully denied, with section 2615(a)(2) providing the route whenever an employee was fired, demoted, or had their hours reduced. The Act demands no such distinction.[24] The difference between these claims is instead about whether an employee's harm stems from the denial of an entitlement or retaliation for having invoked their right to leave. That is why they are analyzed under different frameworks. And that is also why the failure of Wert's retaliatory termination claim does not necessarily preclude her interference claim.

When assessing section 2615(a)(2) FMLA interference claims, courts use a five-part assessment that does not contemplate the employer's subjective intent. Its focus, rather, is on whether the employee was denied a lawful right. Indeed, the employee must show that

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3)

---

[23] *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) ("§ 2617 provides no relief unless the employee has been prejudiced by the violation").

[24] *See Smith*, 298 F.3d at 961.

. . . [he or she] was entitled to FMLA leave; (4) . . . gave notice to the defendant of his or her intention to take FMLA leave; and (5) . . . was denied benefits to which she was entitled under the FMLA.

In a retaliation claim, however, the employer's motive is squarely at issue. Its adverse employment action must have come in response to the employee's invocation of FMLA leave. When there is no direct evidence of retaliatory intent, as is often the case, courts have assessed these section 2615(a)(1) claims using the *McDonnell Douglas* burden-shifting framework.[25] The purpose of this framework is to progressively "sharpen the inquiry into the elusive factual question of intentional discrimination."[26] And when retaliation is the pertinent form, the touchstone is timing. At the prima facie stage, employees can create a presumption that their invocation of FMLA leave caused the adverse employment action by producing evidence that the events occurred close in time, or—when the time between the two is more attenuated—that there was a pattern of antagonism in the intervening period.[27] The employer can defeat this presumption by providing a legitimate nondiscriminatory reason for their action.[28] But on this front, the employer bears the burden of production, not persuasion. It must simply articulate a lawful reason for

---

[25]   *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 693 F.3d 294, 302 (3d Cir. 2012).

[26]   *Tex. Dept. of Comm. Affs. v. Burdine*, 450 U.S. 248, 255 n.8 (1981).

[27]   *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir. 1997); *see Bundhun v. Reading Hosp. and Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) ("To demonstrate a causal connection, a plaintiff generally must show 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'").

[28]   *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014).

the action. And that requires only the production of evidence that "would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."[29] If the employer does so, the burden then shifts back to the employee, who must show that the rationale is pretextual.[30]

In assessing Wert's retaliation claim at summary judgment, I determined that her last invocation of FMLA leave had not been close enough to her firing to create a rebuttable presumption of retaliation, nor had there been a pattern of workplace antagonism that otherwise made up for this attenuation.[31] En route, I emphasized that even if I considered dates after her FMLA certification lapsed  where there was no indication that she had invoked FMLA leave, such as her March 3 absence for a headache, there was still not enough temporal proximity to create a presumption. Still, despite finding that Wert could not make out a prima facie case, I continued on with the *McDonnell Douglas* analysis.[32] And in doing so, I concluded that had Wert succeeded at the first stage, her claim would still falter at the third because Penn State articulated a legitimate nondiscriminatory rationale for her firing, which she could not show was pretextual.[33]

The particulars of this legitimate nondiscriminatory rationale—and what courts assess in retaliation claims writ-large—take on heightened significance here.

---

[29]   *Burdine*, 450 U.S. at 257.
[30]   *Id.* at 256.
[31]   *Wert*, 2021 WL 1721574, at *4–6.
[32]   *Id.* at *6.
[33]   *Id.*

My finding that Penn State had shown an acceptable reason centered on a letter to Wert memorializing her termination.[34] The letter details how, despite areas of needed improvement having been communicated to her in October 2016, her performance had not improved.[35] It first notes that Wert failed to improve her non-FMLA sick leave, logging 119.10 hours between October 12, 2016 and May 22, 2017.[36] It next details how, over this same seven-month period, she had ten times failed to notify her supervisor of an unexpected absence within an hour of her start time, as required.[37] It then highlights how Wert had consistently failed to get permission to adjust her work hours—by coming in early, staying late, or working through lunch.[38] And it finally includes that she had failed to timely submit her March 2017 timesheet.[39]

This Court need not decide whether, given its *McDonnell Douglas* origin, an employee's failure to overcome an employee's legitimate, nondiscriminatory rationale *ever* means that their firing should be considered a valid termination in other contexts.[40] That thicket can be left for another day because in blessing Penn State's rationale as legitimate and nondiscriminatory, and finding that Wert had not

---

[34] *Id.*; *see also* Doc. 51 at 2–3. *See generally* Doc. 28-1.
[35] *See* Doc. 28-1 at 3–5.
[36] *Id.* at 3.
[37] *Id.* at 3–4.
[38] *Id.* at 4.
[39] *Id.*
[40] At the very least, however, *Brunelle v. Cyro Indus.*, 2003 WL 21032016, at *1 (D. Me. May 6, 2003) and *Baeza v. Verizon Wireless Tex., LLC*, 2021 WL 4749505, at *4–5 (W.D. Tex. Oct. 8, 2021) correctly identify that the answer here is not *always*.

proven that it was pretextual, I considered a different set of facts. I did not weigh whether Wert's 119.10 hours of non-FMLA sick time included days that would have otherwise been considered FMLA-excused if Penn State's post-January 26, 2017 decertification was wrongful. As a result, the dismissal of her retaliation claim does not preclude her attempt to recover post-termination damages through her interference claim.

This finding, however, comes with a few caveats.

To start, there's Wert's burden of proof on damages should her interference claim succeed. In response to Penn State's motion in limine, Wert contends that she has a right to post-termination lost wages because time she took off for migraines after Penn State interfered "was counted against her and factored into her termination."[41] But under section 2617, Wert must go beyond merely proving that these days factored into termination. To recover post-termination damages, she must prove that if not for these improperly counted days, she would have kept her job.

This standard is demanded by the text. Section 2617(a)(1)(i)(I) provides that "[a]ny employer who violates section 2615 . . . shall be liable to any eligible employee affected . . . for damages equal to . . . the amount of . . . any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation . . . ." The operative language: *by reason of*.

---

[41]    Doc. 52 at 18.

This phrase imposes both a "'factual' (or 'but-for') cause, and 'legal' (or 'proximate') cause" requirement on the recovery of lost compensation and benefits.[42] That's because "the words 'by reason of' indicate that the adverse action must be the principal cause—*the* reason—for the loss of compensation."[43] And this interpretation is backed by experience: courts have interpreted the phrase to require both but-for and proximate causation across a host of other statutes—including RICO civil suits, the Clayton Act, the Sherman Act, and the Anti-Terrorism Act.[44]

Meeting this standard is easy enough when a discharged plaintiff alleges retaliation. There, the wrongful act, the firing, is so closely tied to the loss of wages and benefits that the analysis is essentially perfunctory. But the task is more difficult when a discharged plaintiff, like Wert, rests her claim on upstream interference. Here it will require that she show that she would have kept her job if over that seven-month period she had instead logged 87.10 hours of non-FMLA sick leave, while also failing to notify her supervisor of unexpected absences ten times, habitually adjusting her work schedule without permission, and failing to submit her March 2017 attendance.[45]

---

[42] *Breeden v. Novartis*, 714 F. Supp. 2d 33, 35 (D.D.C. 2010).

[43] *Id.* at 36 (emphasis in the original).

[44] *Id.* (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 265–68 (1992), *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 531–36 (1983), *Loeb v. Eastman Kodak Co.*, 183 F. 704, 709–10 (3d Cir. 1910), and *Rothstein v. UBS AG*, 647 F. Supp. 2d 292, 295 (S.D.N.Y. 2009)). *See also Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653–54 (2008).

[45] *See* Doc. 52 at 18 (arguing that Wert took non-FMLA time for a migraine on January 27, March 3, March 27, and May 18); Doc. 28-1 at 3 (noting that Wert had used 119.10 hours of non-FMLA sick leave between October 12, 2016 and May 22, 2017). The 87.10 number was

The second caveat relates to the damages that Wert can recover if she shows that Penn State's interference caused her termination. Penn State asks that I bar evidence of Wert's wage loss after November 2018, contending that because she was dismissed from her job at Mount Nittany Medical Center "for repeated breaches of HIPAA security protocols," she failed to mitigate and therefore cannot recover subsequent lost wages.[46] But this request conflicts with the Third Circuit's approach to backpay awards in employment discrimination cases.

In a Title VII case, *Booker v. Taylor Milk Co.*, the Third Circuit rejected this "no mitigation-no back pay" rule after a defendant argued that because the plaintiff "failed to mitigate damages to some extent, he wholly forfeit[ed] the right to back pay . . . ."[47] Instead, the Third Circuit affirmed the district court's decision to reduce the back pay awarded to the plaintiff "by the amount he could have earned with reasonable diligence."[48] Courts in this circuit have since applied this principal to FMLA claims.[49] I agree.

---

reached by subtracting four eight-hour workdays for the days Wert claims to have missed due to headaches or migraines. Wert also asserts that this tally may be greater, as she "had no incentive to report that any days she took off after January 26, 2017 were caused by her migraines because Penn State unequivocally informed her that days off due to migraines would not be considered FMLA time." Doc. 52 at 18. If she can prove that she missed more days due to migraines, this 87.10 figure can be reduced. But she will be subject to impeachment if her account differs from official records or her explanation of why she missed certain days in her deposition. *See* Doc. 28-4 at 95–111.

[46]   Doc. 51 at 9.

[47]   64 F.3d 860, 866 (3d Cir. 1995).

[48]   *Id.* at 867.

[49]   *Cohen v. CHLN, Inc.*, 2012 WL 407443, at *2–3 (E.D. Pa. Feb. 9, 2012) (Hart, M.J.); *Viereck v. City of Gloucester City*, 961 F. Supp. 703, 709 (D.N.J. 1997).

Now, this principal cuts both ways. Should Wert prove her case, Penn State would not be absolved of financial responsibility after her November 2018 termination from Mount Nittany. But at the same time, Wert's firing may also limit her recovery. If Penn State proves that she was indeed fired for-cause, from November 2018 on, she will be entitled only to the difference between the salary and benefits that she would have received at Penn State and the salary and benefits she would have received at Mount Nittany—that is, the amount she would have earned had she exercised reasonable diligence.[50] This approach is not reflected in Wert's economic loss report. Though it is hard to ferret out the differences, by my rough calculation this nearly halves her net lost back pay and front pay—working a substantial reduction in her 2019 award (alongside a smaller reduction to her 2018 and 2020 award) and increasing her forward-looking base annual mitigating wage from $39,865 to about $41,500.[51] But despite the fact that this outcome appears preordained, this a matter for the jury. Whether Wert was fired for-cause (and thus failed to exercise reasonable diligence) is a question of fact that this Court cannot resolve based on an admission in an expert's report.[52]

---

[50]  *See* Doc. 51-1. This statement assumes, as indicated in the report, that the Mount Nittany job paid more than her jobs since.

[51]  *See id.* at 5–8; *see* Doc. 51 at 9 (asserting that her job at Mount Nittany Medical Center would have earned her "approximately $41,644.00").

[52]  *Viereck*, 961 F. Supp. at 709; *see* Doc. 51 at 8 (citing Doc. 51-1 at 5).

**B.    The Lawfulness of the Second Opinion and Wert's Ability to Prove Penn State's Notice of Her Serious Medical Condition**

Penn State also asks that I preclude evidence that Wert was entitled to FMLA leave after January 2017 and that she was subjected to an unlawful second opinion. In pursuit of the former, Penn State contends that Wert cannot prove that she had a serious medical condition entitling her to FMLA leave—thus preventing her from making out her prima facie case. For the latter, meanwhile, Penn State asserts that whether or not the second opinion was a certification or recertification, their reliance on it in denying Wert's certification did not constitute interference because 29 U.S.C. § 2613(d)(1) does not require a third opinion. But on both points, finding for Penn State would require an illogical construction of the law.

To start, in asserting that third opinions are optional when an employer-sought second opinion conflicts with an employee's initial certification, Penn State pours tremendous weight into the statute's use of the permissive "may."[53] The University argues that it was not required to obtain a third opinion because 29 U.S.C. § 2613(d)(1) provides that when "the second opinion . . . differs from the opinion in the original certification . . . the employer may require, at the expense of the employer, that the employee obtain the opinion of a third health care provider designated or approved jointly by the employer and the employee . . . ." I agree that a third opinion was not required. But it is downright wishful to think that the statute

---

[53]    Doc. 53 at 7.

allows for anything but two options when a second opinion conflicts with the first: the employer may either accept the first or seek (and pay for) a binding third.

Indeed, Penn State's imagined escape hatch conflicts with various parts of the statutory and regulatory regime. To begin with, Penn State's interpretation is out-of-step with 29 U.S.C. § 2613(a), which similarly uses a permissive "may" in detailing employer's ability to require that employees seeking leave furnish an initial certification. It provides, "[a]n employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee . . . ." The alternative? Taking the employee at their word.

That Penn State is not entitled to simply award itself the tie is also reinforced by differences between the statutory requirements for the second and third opinions. Under section 2613(c)(1), employers that doubt the validity of the first certification can get a second opinion from a health care provider of its own choosing.[54] But in section 2613(d), dubbed "Resolution of conflicting opinions," when selecting a third provide to resolve a conflict, both the employer and employee must approve the provider—whose opinion is final and binding.[55] This approach is furthered by 29 C.F.R. § 825.307(c), which sets tie-break procedures when the parties fail to agree on that third provider: "If the employer does not attempt in good faith to reach agreement, the employer will be bound by the first certification. If the employee

---

[54]   29 U.S.C. § 2613(c)(1). In subsection (c)(2), the statute requires, however, that this employer-selected doctor "not be employed on a regular basis by the employer."
[55]   29 U.S.C. § 2613(d)(1)–(2).

does not attempt in good faith to reach agreement, the employee will be bound by the second certification." Penn State's chosen interpretation is a possible one—in the limited sense that the permissive "may" does not require that they seek a third opinion. But nowhere does the statute permit them to choose their own doctor's opinion in the case of a conflict. To think otherwise requires complete disregard for the regime that Congress has established.

Penn State is also wrong to suggest that Wert's lack of FMLA certification after January 2017 somehow means that she cannot prove that she had a serious medical condition or that Penn State had notice of her intent to take FMLA leave for it—two necessary components of her prima facie case.[56] These arguments are tautological. An employer cannot escape liability by claiming they had no notice after telling an employee that she was no longer entitled to ask for FMLA leave. But even so, this argument would fail on the facts, as Wert tried to take leave for a migraine the day after her certification lapsed.[57] Likewise, Section 2615(a)(1) provides a right of action for employees whose FMLA leave has been interfered with or denied. It would be nonsensical to require that these employees furnish a valid certification to prove their entitlement to leave when the whole point of the exercise is to assess whether that certification has been improperly denied.

---

[56] Doc. 51 at 15.
[57] *Id.* at 13 (noting that Penn State denied Wert's request for FMLA leave on January 27, 2017 for a migraine).

In fact, to the extent that there is uncertainty on this latter area of law it is about whether an employer can even challenge the validity of an initial certification at trial.[58] But as most of the cases involve a slightly different posture—usually challenges to certification after no second opinion was sought (though this difference may simply underscore the fact that Penn State is on an island in believing that it could deny certification based on its own selected provider's second opinion)—and the issue has neither been raised by Wert, nor briefed, I think it best to move forward under the assumption that Wert will have to prove that she had a "'serious health condition' entitling her to FMLA leave."[59] Still, she may do so through her physician's testimony and her own—no post-January 2017 FMLA certification required.

In its motion, Penn State sought to exclude evidence on the basis that its second opinion was lawful, which had the cascading effect of preventing Wert from proving that the University had notice of her serious and legitimate medical condition. But closer inspection reveals just the opposite. Rather than proceeding to a binding third opinion, which could have vindicated its suspicion that her leave was

---

[58]   *Compare Schermitzler v. Swanson*, 2021 WL 2915029, at *5–7 (E.D. Wis. July 12, 2021) and *Sims v. Alameda-Contra Costa Transit Dist.*, 2 F. Supp. 2d 1253, 1261–62 (N.D. Cal. 1998) (finding that employers cannot challenge a certification at trial because section 2613 "is the exclusive way for an employer to challenge an employee's certification) with *Rhoads v. F.D.I.C.*, 257 F.3d 373, 385 (4th Cir. 2001) and *Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 860 (8th Cir. 2000) (finding that failing to seek out a second opinion does not waive an employer's right to contest the validity of an individual's certification).

[59]   *Bonkowski v. Oberg Indus., Inc.*, 787 F.3d 190, 197 (3d Cir. 2015).

unwarranted, Penn State denied Wert's certification based on a doctor of its own choosing's assessment. That violates 29 U.S.C. § 2613.

## IV.    CONCLUSION

Penn State's motion in limine is denied. At trial, Wert must prove that she had a serious medical condition and that the denial of her FMLA leave certification was the but-for and proximate cause of her termination.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

- 18 -